**UNITED STATES, Appellant,**

v.

**Sergeant Kevil ARNOLD, 244–19–9145,
United States Army, Appellee.**

**ACMR MISC 8901427.**

U.S. Army Court of Military Review.

6 July 1989.

For Appellant: Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain John J. Hogan, JAGC (on brief).

For Appellee: Colonel John T. Edwards, JAGC, Lieutenant Colonel Russell S. Estey, JAGC, Captain Keith W. Sickendick, JAGC, Captain Gregory A. Gross, JAGC (on brief).

Before DeFORD, KENNETT,* and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Contrary to his pleas, the appellee was convicted by a general court-martial composed of officer and enlisted members of wrongful use of amphetamines, wrongful distribution of amphetamines (four specifications), and wrongful possession of amphetamines with intent to distribute, all in violation of Article 112a of the Uniform Code of Military Justice, 10 U.S.C. § 912a (supp.) [hereinafter UCMJ]. The convening authority approved the appellee's sentence to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to Private E1. On 29 August 1988, this court dismissed one specification of distribution of amphetamines, set aside the remaining findings and the sentence, and authorized a rehearing thereon. *United States v. Arnold,* 26 M.J. 965 (A.C.M.R.1988).

On 9 December 1988, a rehearing was ordered by a different convening authority. During a pretrial hearing conducted on 30 March 1989, the military judge found the Government accountable for 121 days on the speedy trial clock. He therefore granted the appellee's motion to dismiss for noncompliance with the speedy trial require-

* Judge MICHAEL B. KENNETT took final action on this case prior to his reassignment.

ment of Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707 (hereinafter R.C.M.). *See United States v. McFarlin*, 24 M.J. 631 (A.C.M.R.1987). The Government objected to the military judge's order and, as authorized by Article 62, UCMJ, 10 U.S.C. § 862, subsequently filed this appeal.

Upon initial review of the issues in this case, we determined that the military judge failed to include in the record the factual findings upon which his decision dismissing the charges was based. Consequently, this court directed that such findings be made and forwarded to this court for our consideration of this appeal.

■ Article 62(a)(1), UCMJ,[1] authorizes the Government to "appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material to the proceeding." There is no question that the issue appealed is proper as the ruling in question dismissed the specifications and charge referred to trial. Furthermore, the Government's appeal was perfected within the time requirements set forth in the statute and the Manual. *See* Article 62, UCMJ; Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 908. Consequently, the case is properly before us for decision.

■ When the Government appeals a decision of the trial judge terminating the proceedings, this court may act only with respect to matters of law. Article 62(b), UCMJ. Where, as here, the trial judge's findings are based upon specific findings of fact, this court may reverse the trial court's ruling only if its factual findings were erroneous as a matter of law. *United States v. Burris*, 21 M.J. 140 (C.M.A. 1985); *United States v. Austin*, 21 M.J. 592 (A.C.M.R.1985). A factual finding is "erroneous as a matter of law" when it is unsupported by any substantial evidence or when it is against the clear weight of the evidence. *United States v. Burris*, 21 M.J. at 144; *United States v. Austin*, 21 M.J. at 596 (citing *Shapiro v. Rubens*, 166 F.2d 659 (7th Cir.1948)). *See also United States v. Bradford*, 25 M.J. 181, 184 (C.M.A.1987). This court may not retry the issues of fact nor supplant the trial court's ruling.

Before this court, the Government contends that the military judge erred as a matter of law by charging two periods of delay to the Government. We disagree and affirm the military judge's order dismissing the charge and specifications on these grounds.

I

FACTS

A

■ On 29 August 1988, this court, as we have noted, set aside appellee's previous conviction and authorized a rehearing. The convening authority received notice of this court's decision no later than 9 September 1988 and received the record of trial of the appellee's previous court-martial on 12 September.[2] The Government stipulated

---

1. "In a trial by a court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceeding. However, the United States may not appeal an order or ruling that is, or that amounts to a finding of not guilty with respect to the charge or specification."

2. Although the appellee argued that the speedy trial clock was triggered on 9 September 1988, the military judge ruled that the speedy trial clock started running on 12 September 1988, the date that the record of appellee's previous trial was received by the convening authority. In *United States v. McFarlin*, this court ruled that the speedy trial clock for purposes of rehearings is triggered on the date that the convening authority receives notice of this court's decision, not the record of trial. *United States v. McFarlin*, 24 M.J. 631, 635 (A.C.M.R.1987). A memorandum of this court's action was sent to the convening authority on 8 September 1988. There is no evidence of the date of its receipt; however, the staff judge advocate, in a memorandum dated 9 September 1989, advised the commandant of the United States Disciplinary Barracks of this court's decision and advised him that the decision required appellee's release from confinement. Thus, pursuant to *McFarlin*,

that, sometime in November 1988, prior to the date of referral, the case had been docketed for trial on 5 January 1989 (day 115 on the speedy trial clock).

The convening authority subsequently referred the charges on 9 December 1988 (day 88 on the speedy trial clock). On 16 December 1988, the appellee submitted a Request for Individual Military Counsel to the convening authority. The office of the staff judge advocate transmitted an informal notice to the Commander, USAREUR and Seventh Army, that such a request would be forthcoming. However, the Government did not transmit a formal request to that command until 3 January 1989 (day 113 on the speedy trial clock).[3]

The record of trial indicates that the Government could offer no evidence as to the date when the request was actually approved. On 17 January, however, the Government transmitted an electronic message to the Commander, U.S. Army Combined Arms Training Center, Vilseck, Germany, acknowledging receipt of telephonic notice of approval of the request for individual military counsel and advising the individual military counsel of the fund cites necessary for travel at government expense.[4] The last paragraph of this message states: "Trial counsel has been prepared to proceed to court since 5 [January] ... Please advise on the earliest court date and transmit any requests for delay."

Attached to the record as an appellate exhibit is an undated, written request for delay submitted by the original detailed defense counsel[5] for the period 16 December 1988 through 10 January 1989. This "request" states that the delay was necessary "so that the [appellee] can consult with civilian counsel" and because the appellee was awaiting a response to his request for individual military counsel. A penciled notation on the document indicates, however, that it was not received by the Government until 5 January 1989.[6]

Additionally, the Government offered the testimony of a Government clerk who had been responsible for preparing subpoenas for the 5 January trial date. He initially testified that, when the 16 December request for individual military counsel was received, "I had to stop [processing subpoenas for witnesses] because then I have no date to tell them to travel" and because he could not provide orders and fund cites without a date for travel. On cross-examination, however, this witness further testified that it was the trial counsel who had instructed him that further action was unwarranted:

[Trial counsel] said that—you know, if we got that request, we can't go to trial on the 5th—now there's nothing I can do. If I have them travel, we get them here, we turn them around, and we send them back home. It's a waste of time and money.

the speedy trial clock began no later than 9 September.

This issue is not, however, before the court at this time. Therefore, for purposes of this appeal, we restrict our review to those issues of law raised and accept the military judge's ruling that the speedy trial clock was triggered on 12 September 1988.

3. The Government could offer no explanation to account for this delay. The Government clerk who processed the request speculated that the holiday schedule and Christmas season may have been contributing factors, or that the convening authority might not have been available. His testimony clearly indicates, however, that the Government simply neglected to process the request in a timely fashion.

4. The Government did offer testimonial evidence that the individual military counsel had given earlier notice that her command would

approve her appointment. This was not, however, formal approval of the request but was a response to the informal notice previously dispatched on 21 December 1988.

5. This counsel was dismissed by the appellee sometime after 10 January 1988.

6. The Government brief represents that this request was submitted in "late December" and makes reference to the document itself. The document bears, however, the penciled notation "Rec'd 5 Jan 89. WCJ." During the hearing on the motion, a Sergeant First Class William Cody Jones, III, the noncommissioned officer in charge of the Criminal Law Division, testified that his normal procedure on receipt of case-related documents is to note on the document the date of receipt and to initial the document.

The military judge, applying the general rule announced in *United States v. Cole*, 3 M.J. 220 (C.M.A.1977), that the Government is charged with all periods of delay until such time as it has reached a stage of readiness for trial, charged the period 16 December 1988 through 5 January 1989 to the Government.

## B

Turning to the second period of delay in issue here, the period of 13 January through 16 January,[7] the record reflects the following facts.

On 10 January, civilian defense counsel notified the trial counsel that he might be retained by the appellee. Justifiably concerned that speedy trial might become an issue in the case, the trial counsel solicited a written request for delay. When no request was submitted, the trial counsel placed several telephone calls to the detailed defense counsel but was not successful in contacting her until 12 January. The trial counsel testified that the detailed defense counsel informed her that she had been dismissed from the case and refused to submit a request for delay on the appellee's behalf.[8]

On Friday, 13 January, trial counsel placed a call to civilian defense counsel and solicited a defense request for delay. Trial counsel testified that civilian defense counsel informed her that he had not yet been retained and referred her to the individual military defense counsel.[9] The trial counsel notified the military judge of the situation. According to the trial counsel, "we [she and the military judge] tried to get the RDC [regional defense counsel] to give us a local counsel [but] that fell through." Civilian defense counsel testified that the military judge had telephonically contacted

him on that same day and that he had advised the military judge, as he had the trial counsel, that he had not yet been retained.

On Tuesday, 17 January,[10] the military judge again placed a call to the civilian defense counsel. The civilian defense counsel testified that he had advised the military judge during this conversation that he had in fact been retained by the appellee. The military judge then obtained a request for thirty days delay. The evidence of record makes clear that all of the parties—the military judge, trial counsel, and civilian defense counsel—treated this thirty day continuance as including the period 17 January through 15 February.

The military judge who heard the motion made a finding of fact that civilian defense counsel had, during the 13 January telephone conversation, clearly advised the original military judge that he was not at that time counsel for the appellee and would not request defense delay in the case. The military judge ruled that the Government had failed to comply with the procedural requirements of *United States v. Carlisle*, 25 M.J. 426 (C.M.A.1988), and charged to the Government the period of delay 10 January through 16 January.

## II

### 16 DECEMBER THROUGH 4 JANUARY

■ The Government contends that the military judge erred in charging to the Government the 16 December through 4 January time period. They argue that inasmuch as the original defense counsel requested that period as defense delay, the

---

7. The Government's appeal suggests that the military judge did not exclude 17 January. It is obvious from the record that he did.

8. Trial counsel's efforts in this regard would have been better spent had she obtained an Article 39(a), UCMJ, session before the trial court and moved the court to order the time expended be charged to the defense.

9. The trial counsel testified that she had in fact contacted the individual military defense coun-

sel and solicited a defense request for delay. However, this request was not in the hands of the Government until 21 February and even then only requested defense delay for the period 18 January through 28 March.

10. Monday, 16 January 1989, is a Federal holiday set aside for observance of Martin Luther King's birthday.

exclusionary provision of R.C.M. 707(c)(3) [11] is to be applied automatically. Under this theory, the exclusionary provisions would operate "without requiring a factual determination of causation." [12] *United States v. Novak*, 715 F.2d 810, 813 (3d Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). If such a rule were adopted, the Government would need only to demonstrate that there was in fact a defense request for delay and need not show that its noncompliance with the 120–day rule of R.C.M. 707(a) [13] was actually the result of the request for delay. The application of this rule to the case at bar would mean that the trial defense counsel's request for a continuance of 26 days (16 December 1988 through 10 January 1989) would be charged to the defense even though their request caused actual delay from 6 January 1989 to 10 January 1989, a period of four days.

In support of this contention, the Government argues only that a causation requirement "would require extremely difficult inquiries to determine whether a particular event did or did not delay commencement of the trial" and concludes that "the specific exclusions should be presumed to have delayed trial." We decline to adopt the automatic-exclusion rule for a number of reasons.

First, the Government argument that a causation showing should not be required as a matter of judicial policy is unpersuasive and contrary to precedent. The exercise of fact-finding powers is one of the inherent duties of courts-martial. Indeed, making "difficult factual determinations" is a standing requirement of the judiciary. Nor have factual determinations of causation in the area of speedy trial proved particularly onerous; military courts have long labored under the obligation of determining causation in evaluating speedy trial issues under *United States v. Burton*, 44 C.M.R. 166 (C.M.A.1971). *See United States v. Cole*, 3 M.J. 220 (C.M.A.1977). *See, e.g., United States v. McCallister*, 24 M.J. 881 (A.C.M.R.1987); *United States v. Honican*, 27 M.J. 590 (A.C.M.R.1988).

Second, the federal precedents rely upon legislative intent as authority for automatic application of the exclusionary provisions.[14] The provisions for speedy trial set forth in the Manual for Courts–Martial are, quite simply, not to be measured by the Speedy Trial Act enacted by Congress. Although both the military and Congressional provisions for speedy trial have a common purpose and a common antecedent in the mod-

---

**11.** R.C.M. 707(c)(3) provides for exclusion of "[a]ny period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense."

**12.** The Government urges this court to rule that all of the exclusionary provisions of R.C.M. 707(c) are to be applied automatically save R.C.M. 707(c)(9). *See United States v. Durr*, 21 M.J. 576, 578 (A.C.M.R.1985) (requiring the Government *to* demonstrate a nexus *in order to* justify exclusion under R.C.M. 707(c)(9)). This case concerns only the application of R.C.M. 707(c)(3). We decline to issue an advisory ruling on an issue not before the court.

We note, however, that, were this court to hold the exclusions of R.C.M. 707(c) automatic in application, the Government would likewise be bound by the rule. Consequently, the Government would forfeit a number of favorable rulings otherwise permitting exclusion of periods of delay caused by an accused. For example, the Government is currently entitled to exclusion of not only the period of time during which an accused is actually absent, but also the exclusion of the reasonable period of time required to return the accused to the appropriate command for disposition of charges. *See United States v. Turk*, 24 M.J. 277 (C.M.A. 1987) (periods of delay "resulting from" the absence of an accused are to be excluded as well as the actual period of absence). If the causation determination were eliminated, exclusion would be determined solely by the dates of the accused's absence and any logistical inconvenience resulting from the accused's absence would not be factored into the amount of time to be excluded.

**13.** R.C.M. 707(a) provides that "[t]he accused shall be brought to trial within 120 days" of the occurrence of one of three trigger provisions.

**14.** In one case, *United States v. Stafford*, 697 F.2d 1368 (11th Cir.1982), the court did reference the "difficult practical questions" a causation requirement would raise. The *Stafford* court's decision is, however, premised upon a construction of the statute and references the difficulty only as justification for its ruling. *United States v. Stafford*, 697 F.2d at 1371. The *Stafford* decision also references legislative materials as justification for its construction. *Id.*

el rules proposed by the American Bar Association, a comparison of the exclusionary rules of the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)–(8), with the exclusionary rules of R.C.M. 707(c)(1)–(9) reveals little similarity. To the contrary, the Drafter's Analysis states that R.C.M. 707 "is based on *ABA Standards, Speedy Trial* (1978)" and that the exclusionary provisions of the Manual only "generally parallel" those of the Speedy Trial Act. The Government offers neither rationale nor precedent—and we find none—which would justify imputing to the President the purported legislative intent underlying enactment of the Speedy Trial Act.[15] We are not persuaded that the legislative intent underlying enactment of the Speedy Trial Act can be justifiably imputed to the President in his promulgation of a rule quite distinct from the Speedy Trial Act.

Even assuming that the intent of Congress could be justifiably imputed to the President, *see* Article 36, UCMJ, we do not find sufficient basis for adopting a construction inconsistent with the plain language of the rule. The plain language of R.C.M. 707(c)(3), unlike any of the exclusionary provisions of the Speedy Trial Act, provides for exclusion of "[a]ny period of delay *resulting from a delay* in a proceeding or a continuance in the court-martial." From this language, the event or condition triggering exclusion is *not* the mere fact that the defense has requested such a delay; rather, the rule requires actual delay.[16] The reference to "defense request"

simply limits the classes of continuances or "delays in a proceeding" which may be excluded. Obviously, in those situations where no date for trial has been set, or where the docket date for the trial lies beyond the period of purported delay, there cannot be a delay in a proceeding or a continuance in a trial.

■ Accordingly, we reject the interpretation of R.C.M. 707(c)(3) urged by the Government and reaffirm the rule that the Government is charged with all periods of delay until such time as it has reached a stage of readiness for trial as established by facts clearly shown in the record or by the date the case is docketed for trial. *See United States v. Carlisle*, 25 M.J. at 428 (citing *United States v. Cherok*, 22 M.J. 438 (C.M.A.1986)).[17]

■ In the case at bar, the facts of record clearly support the military judge's finding that the defense request for delay in this instance did not in fact delay the proceeding. The appellant's request for individual military counsel was a matter wholly collateral to the Government's unilateral decision to forfeit 115 days on the speedy trial clock by docketing the case for trial on 5 January.

■ We further find that the military judge correctly rejected the Government's argument below that the appellant's request for individual military counsel during this period of time delayed the proceeding. The exclusion of such "delay" is only permissible pursuant to R.C.M. 707(c)(4) which

---

15. In adopting the rule, several courts have themselves questioned the correctness of their ruling. "Congress' repetitious use ... of the words 'delay resulting from' suggests that exclusions were to be granted only to proceedings which actually delayed commencement of a trial." *United States v. Cobb*, 697 F.2d 38, 41 (2d Cir.1982). "If the pretrial motion did not actually delay the trial date, there seems little reason to exclude the time." *United States v. Novak*, 715 F.2d 810 (3d Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

16. The *Cobb* decision cited by the Government itself specifically preconditions automatic exclusion on proof by the Government that "proceedings were pending." *United States v. Cobb*, 697 F.2d at 42.

17. The Government cites two decisions of the United States Navy–Marine Court of Military Review as precedent purportedly adopting a rule of automatic exclusion by the Navy Court, *United States v. Lilly*, 22 M.J. 620 (N.M.C.M.R. 1986), and *United States v. Jones*, 22 M.J. 515 (N.M.C.M.R.1986). We note a subsequent decision, *United States v. Ruhling*, where that court has stated, "We also agree with the ... statement that 'The government cannot trigger an exclusion under R.C.M. 707(c) simply by stating "Ready for trial, Your Honor." '" *United States v. Ruhling*, 28 M.J. 586, 590 n. 3 (1988). Both *Lilly* and *Jones*, however, involved issues of availability, one arising from a sanity hearing, the other from unauthorized absence. Neither case is persuasive on the issue of automatic exclusion under R.C.M. 707(c)(3).

provides for exclusion of delays resulting from a defense failure to "provide notice, make a request, or submit any matter in a timely manner." It was not unreasonable for the appellant to request individual military counsel on 13 December when the charges were not served upon him until 5 December. Conversely, one might speculate as to what the Government was doing with regard to the charges during the period following notification of remand to referral.

█ Finally, we find that the military judge correctly rejected the Government's argument below that a request for individual military counsel makes it impossible for the Government to proceed to trial "because it has no trial date for which to subpoena witnesses." [18] It is not the province of trial counsel to anticipate defense requirements for delay and there exists no legal requirement that trial counsel accede to an accused's docketing requests. Certainly, the act of docketing a case for trial has certain ministerial features appropriate for the exercise of professional courtesy and accommodation. However, as the date anticipated for trial approaches day 120 on the speedy trial clock, the ministerial aspects of the act diminish and its adversarial nature becomes more pronounced. It is the trial counsel's duty to zealously represent her client by insuring that the Government's case is not foreclosed because of the technicality of R.C.M. 707(a). If the defense will not be prepared on the date set for trial, theirs is the burden of obtaining a continuance. If defense refuses or fails to do so in a timely manner, the court is not without power to sanction defense intransigence or to compel action for defense negligence. Thus, the Government may make preemptive motion for appropriate relief in order to avoid needless expense and vexa-

tion. The trial counsel's failure to zealously represent her client, the Government, is not one of the exclusionary provisions of R.C.M. 707(c).

## III

## 10 JANUARY THROUGH 17 JANUARY

█ The Government further contends that the conversation of 13 January between civilian defense counsel and the military judge was a request for a delay which was approved by the military judge. Not only does the purported request for delay fail to comply with the procedural requirements of *United States v. Carlisle*, there was in fact no request for delay.

*Carlisle* establishes a bright-line rule that the Government is accountable for every day an accused is available for trial unless the Government can demonstrate that either the convening authority or the military judge has approved a period of delay. *United States v. Carlisle*, 25 M.J. at 428. Further, the only evidence competent to establish approval is a writing reflecting the action or the record of trial itself. *See United States v. Carlisle*, 25 M.J. at 428 (citing *United States v. Burris*, 21 M.J. 140, 145 (C.M.A.1985)).

The record is devoid of any evidence justifying an inference that a request for delay was made, much less approved by the military judge. To the contrary, the record establishes that neither civilian defense counsel or the military judge considered the conversation a request for delay. Further, the statement of facts submitted by the Government on its face demonstrates that the civilian counsel had no attorney-client relationship with the appellee on 13 January. Consequently, there are no facts

---

**18.** The Government argued before the trial court:

> All the plans that the government has in preparation for that case [in which a request for individual military counsel is requested], in bringing witnesses back, and in heading toward that [trial] date, as soon as that IMC [individual military counsel] request comes in, obviously, there's no sense in heading towards that date anymore and making prepa-

rations towards it to get people here. Because once an IMC request is in, there usually has to be a resolution on that, which is usually that the IMC is granted, before any more motion can be made in the case.

While we recognize it is never easy for the trial counsel in a fluid situation to plan the exact time to have witnesses under subpoena, it is not in our view an impossible task.

which would warrant an inference that a request for delay was made or that the requirements of *Carlisle* were satisfied.[19]

The Government's appeal of the military judge's decision to charge the period 16 December 1988 through 4 January 1989 and the period 10 January through 17 January 1989 to the government for speedy trial purposes is denied. The trial judge's ruling thereon is affirmed and the record of trial is returned to the trial court for further proceedings not inconsistent with this opinion.

Judge KENNETT and Judge WERNER concur.

19. The factual circumstances which gave rise to this appeal and other speedy trial issues of similar ilk could easily be avoided if the convening authority would, upon referral, forward a copy of the charges to the servicing military judge by the most expeditious means. The military judge would, upon receipt, either present the matter to counsel at an early docketing session and, after hearing their views, set the case on his calendar for trial or, if hearing counsels' views of the matter is not practicable for geographical reasons, set the matter for trial and advise the parties of his action. Thereafter, if either side desires a continuance, they may file a formal motion seeking such relief. The opposing side may agree to the continuance or if they oppose such action, request an Article 39(a) hearing on the matter. In either case, a formal record of the event will be made, the mandate of *United States v. Carlisle, supra,* will be satisfied, and the military judge will insure the case is tried at the earliest practical date. This is a responsibility that all trial judges must bear.