UNITED STATES, Appellee,

v.

**Private E2 Jimmy D. HOWARD, 264–67–0624, United States Army, Appellant.**

**ACMR 9101607.**

U.S. Army Court of Military Review.

11 Sept. 1992.

For Appellant: Captain Michael P. Moran, JAGC, Captain David L. Thomas, JAGC (on brief).

For Appellee: Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

OPINION OF THE COURT

GRAVELLE, Judge:

Pursuant to his pleas, the appellant was convicted of aggravated assault with a loaded handgun, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C.

§ 928 (1982) [hereinafter UCMJ]. A military judge, sitting as a general court-martial, sentenced him to a dishonorable discharge, confinement for four years, forfeiture of $500.00 pay per month for forty-eight months, and reduction to Private E1. The convening authority approved the adjudged sentence.

Before this court, as the defense counsel did at trial, the appellate defense counsel asserts that the appellant was denied his right to a speedy trial as guaranteed by Article 10, UCMJ, 10 U.S.C. § 810, because the appellant was held in pretrial confinement in excess of ninety days. Counsel argues that charges must be dismissed. Counsel further asserts that a new post-trial recommendation is required because the staff judge advocate included information designed to prejudice the appellant. We disagree.[1]

## I. Speedy Trial

The conviction described above was the result of a rehearing ordered by the convening authority after at least one of the eight audiotapes of the original proceeding was inadvertently destroyed prior to transcription. At the original proceeding, a general court-martial composed of members convicted the appellant of attempted murder and other lesser offenses, and sentenced him to a dishonorable discharge, confinement for thirteen years, forfeiture of all pay and allowances, and reduction to Private E1. The original court-martial was conducted at Fort Polk, Louisiana, on 30 May, and 8 and 9 July 1991.

Following trial, the appellant was transported to the United States Disciplinary Barracks at Fort Leavenworth, Kansas, to begin serving his sentence to confinement. Some time in August, the court reporter discovered that one or more of the tapes of the proceedings had been erased. The erasure spanned the critical testimony of at least one witness. By 28 August, it was clear that the erased testimony could not be satisfactorily reconstructed. On that date, the staff judge advocate decided to produce a nonverbatim transcript to facilitate the convening authority's decision to either approve a "nonverbatim record" sentence limited to six months' confinement or to order a rehearing. Because of court reporter workload problems at Fort Polk, the nonverbatim record was prepared at Fort Richardson, Alaska. It was not until 17 October that the nonverbatim record was ready for authentication by the military judge, who was stationed at Fort Hood, Texas. The military judge returned the authenticated record to Fort Polk on 5 November.

On 22 November, the convening authority, having received the record and the advice of his staff judge advocate, decided to order a rehearing of the appellant's case. That rehearing was held at Fort Polk on 10 January 1992. At the rehearing, the trial defense counsel moved to dismiss the charges because of a violation of the appellant's constitutional, statutory, and regulatory right to a speedy trial. The military judge denied the motion, finding that the government had acted in a reasonable manner and with sufficient diligence, that there was no evidence of excessive delay, and that the pretrial confinement was "considerably less than 90 days or 120 days."

Article 10, UCMJ, provides that, "When any person subject to this chapter [the UCMJ] is placed in arrest or confinement prior to trial, immediate steps shall be taken ... to try him or to dismiss the charges and release him." This codal right to a speedy trial is supplemented and implemented by the President in R.C.M. 707[2], which requires that an accused be brought to trial within 120 days of preferral of charges or imposition of restraint. R.C.M. 707(a). A failure to comply with the right to a speedy trial shall result in a dismissal

---

1. A third assertion of error, that the record is not verbatim because it does not contain two of the convening orders, has become moot as the result of a certificate of correction which inserts these documents into the record.

2. Manual for Courts–Martial, United States,

of the charges. R.C.M. 707(d).[3] Finally, by judicial decision the Court of Military Appeals has created a "ninety-day rule." Under this rule, the accused must be brought to trial within ninety days of the imposition of pretrial restraint. Failure to bring the accused to trial creates a presumption of a violation of the Article 10 speedy trial right. *United States v. Burton*, 44 C.M.R. 166 (C.M.A.1971); *United States v. Driver*, 49 C.M.R. 376 (C.M.A. 1974). Whenever the accused's pretrial confinement exceeds ninety days, the government has a heavy burden to overcome this presumption. *Id.* An accused's right to a speedy trial under Article 10 extends to rehearings. *United States v. Flint*, 1 M.J. 428 (C.M.A.1976). "As a general rule, any order for a new trial or a rehearing resets the speedy trial clock anew." *United States v. Gonda*, 27 M.J. 636, 637 (A.C.M.R.1988) (citing *United States v. McFarlin*, 24 M.J. 631, 635 (A.C.M.R.1987), and *United States v. Rivera–Berrios*, 24 M.J. 679 (A.C.M.R.1987)).

■ Rule for Courts–Martial 1103(b)(2)(B)(i) requires that a verbatim record of general court-martial proceedings be prepared when the sentence adjudged exceeds six months. The government's inability to produce a verbatim record, however, does not necessarily render illegal or unlawful the findings or a sentence to con-

finement up to and including six months. *See United States v. Randall*, 48 C.M.R. 215 (C.M.A.1974); *United States v. Gonda*, 27 M.J. at 637. If it is impossible to prepare a verbatim record because of loss of notes or recordings, a nonverbatim record will be prepared, and the convening authority may approve a sentence which could be adjudged by a special court-martial, excluding a bad-conduct discharge. R.C.M. 1103(f). Alternatively, the convening authority "may direct a rehearing as to any offense of which the accused was found guilty *if the finding is supported by the summary of the evidence contained in the record*, provided that the court-martial in a rehearing may not adjudge any sentence in excess of that adjudged by the earlier court-martial." R.C.M. 1103(f)(2) (emphasis added). A convening authority orders a rehearing at the time he takes action on a case. R.C.M. 1107(e)(1)(B).

To decide this issue, we must determine when the sentence to confinement from the original trial became "pretrial confinement" for the rehearing; that is, when the pretrial confinement period began for speedy trial purposes for the rehearing.

The appellant contends that the speedy trial "clock" for the rehearing began to run at the end of August when it became apparent that the transcript would not be verbatim. At that time, he argues, the

---

1984, Rule for Courts–Martial 707 [hereinafter R.C.M. 707].

**3.** The present version of R.C.M. 707 is the result of modifications to the rule by Change 5 to the Manual brought about by Executive Order 12767, dated 27 June 1991, which for Rule 707 is effective in "all cases in which arraignment occurs on or after 6 July 1991." Executive Order 12767, Section 4d. One significant change to this Rule is the elimination of the provision that an accused must be brought to trial within ninety days of the beginning of pretrial confinement. The Drafters' Analysis accompanying the recent change to this Rule states:

> The 90–day rule previously established in R.C.M. 707(d) has been eliminated. As such, the 120–day rule established in subsection (a) of this rule applies to all cases, not just cases where the accused is in pretrial confinement. Judicial decisions have held, however, that when an accused has been held in pretrial

> confinement for more than 90 days, a presumption arises that an accused's right to a speedy trial under Article 10, U.C.M.J. has been violated. In such cases, the government must demonstrate due diligence in bringing the case to trial. *United States v. Burton*, 44 C.M.R. 166 (C.M.A.1971). Unless *Burton* and its progeny are reexamined, it would be possible to have a *Burton* violation despite compliance with this rule.

Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707 analysis (C5, 15 Nov. 1991), app. 21, at A21–37 and 38.

In the case before us, the appellant was arraigned at the original proceeding on 30 May 1991, and at the rehearing on 10 January 1992, the arraignments straddling the effective date of the new version of the rule. Because of our holding, we need not determine whether the older or the newer version of R.C.M. 707 applies to this case. That question is left for another day and another case, as our holding and the outcome is not dependent on the 90–day rule.

staff judge advocate should have notified the confinement facility that the confinement beginning that date was to be considered "pretrial confinement," citing *United States v. Gonda*, 27 M.J. at 637 (speedy trial clock reset the day the confinement facility was notified to change the accused's status from post-trial confinee to pretrial confinee). The appellant here argues that even without some notification to the confinement facility on 28 August, the confinement was still transformed into "pretrial confinement" preparatory to the rehearing. Since the "pretrial confinement" from 28 August 1991 to 10 January 1992 was well in excess of ninety days, there is a presumptive violation of Article 10, UCMJ, pursuant to *United States v. Burton* and R.C.M. 707.

■ The government contends that the speedy trial "clock" began to run on 22 November, the date the convening authority decided not to approve a lessened sentence adjudged in the first proceeding, but instead decided to order a rehearing. Citing other language appearing in the *Gonda* decision, the government argues that a post-trial confinee remains in that status until a rehearing is ordered by the convening authority. The government further argues that R.C.M. 1103 requires the preparation of a nonverbatim record before the convening authority can make an informed decision regarding a rehearing. The government concludes that the number of days of appellant's confinement between 22 November 1991 and 10 January 1992, excluding twenty-five days of defense-requested delay, is well under ninety days. Thus, the

*Burton* "ninety-day rule" does not apply, and no presumptive violation of Article 10, UCMJ, has occurred. Further, the government contends that the chronology of events shows diligent, good faith processing that did not violate the appellant's speedy trial rights.

We agree with the government's reasoning and find that the speedy trial period for the rehearing began on the date that the convening authority decided to disapprove the sentence in the original proceeding and to order a rehearing.[4] As observed by the military judge, the period of time between 22 November 1991 and 10 January 1992 is well under ninety days. We, therefore, need only decide if the government exhibited due diligence. While this case is not a model of speedy processing, the processing time was not unreasonable. We agree with the military judge that the government exercised sufficient diligence, and hold that the appellant was not denied his right to a speedy trial under Article 10, UCMJ, or R.C.M. 707.[5]

II. The Post–Trial Recommendation

■ In his post-trial recommendation, the staff judge advocate included information that the appellant was originally tried on the same charges on 9 July 1991 and that:

[H]e was convicted of attempted murder, assault, disobeying an NCO, failure to store and register a weapon, and wrongful discharge of a weapon and was sentenced to a dishonorable discharge, reduction to the grade of E1, forfeiture of all pay and allowances, and confinement for 13 [thirteen] years.

4. This holding does not conflict with our holding in *Gonda*. In that case someone, presumably with authority to do so, notified the confinement facility to change Gonda's status from post-trial to pretrial confinee a week before the convening authority decided to order a rehearing. Under the circumstances of that case, we held that the date of notification started the speedy trial clock anew. In the case before us, no such notification or change of status occurred prior to the convening authority's decision. To begin the period of accountability in this case on the date the staff judge advocate knew the tape could not be reconstructed, as suggested by the appellate defense counsel, would, in effect, vest the staff judge advocate

with the decision to order a rehearing and deprive the convening authority of that right and responsibility.

5. While we hold that the appellant was not denied his right to a speedy trial and do not dismiss the charges, the time that the appellant spent in incarceration prior to his original hearing and between that proceeding and the rehearing is not without value to the appellant. The parties agreed at trial that the appellant had been incarcerated a total of 255 days prior to the rehearing, and that these days were to be credited against the appellant's sentence to confinement at the rehearing.

This information was contained in a narrative paragraph in the recommendation which described the history of the case.

The appellate defense counsel speculates that including this information is evidence of a bad-faith attempt by an angry staff judge advocate to prejudice the convening authority against granting any clemency in this case. The government appellate counsel responds that the staff judge advocate did not tell the convening authority anything he did not already know about the case, that there was no bad faith, and that the trial defense counsel made no objection to the statement when given an opportunity to do so pursuant to R.C.M. 1106(f).

We hold that it was not error to include information regarding the previous proceeding in this case. In so holding, we find that the nonverbatim transcript of the original proceeding was included in the record of the rehearing as an appellate exhibit. That transcript contained information on the findings and the sentence adjudged at the original proceeding. Moreover, having examined the entire post-trial recommendation, we find no evidence whatsoever that the staff judge advocate included the information out of anger or to prejudice the convening authority. We also believe that the trial defense counsel's lack of an objection cuts against the appellate counsel's theory of a staff judge advocate acting in bad faith. Finally, we find that the defense counsel's failure to object waives the issue. R.C.M. 1106(f)(6).

We have examined the error personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find it to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.